1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7   ATLANTIC-PACIFIC PROCESSING          Case No. 2:21-CV-2060 JCM (NJK)
    SYSTEMS NV CORP.,
8                                                    ORDER
                            Plaintiff(s),
9
           v.
10
    DANIEL PLAUT, et al.,
11
                            Defendant(s).
12

13        Presently before the court is defendant Alan Intrator ("Intrator")'s motion to dismiss.
14   (ECF Nos. 63, 69).  Plaintiff Atlantic-Pacific Processing Systems NV Corporation ("plaintiff")
15   responded.  (ECF No. 76).  Intrator replied.  (ECF No. 80).

16        Also before the court is defendant Daniel Plaut ("Plaut")'s motion to dismiss.  (ECF No.
17   70).  Plaintiff responded.  (ECF No. 77).  Plaut replied.  (ECF No. 83).

18        Also before the court is defendants Baron Internet Marketers, LLC; Yisroel Baron; Jaybri
19   Enterprises, LLC; Jason Briley; Malloria Marketing LLC; Mallori Lari; FDR Online
20   Management LLC; Franklin Roye; Dan Consulting LLC; Danial Levent; NGOC Quality Web
     LLC; Ngoc Peterkin; GN Consulting Services, LLC; Giang Truong Nguyen; Pay Web
21   Consulting Services, LLC; Payam Hendi; Hans Marketing LLC; Denis Chichan Su; MH
22   Creative Web, LLC; Michelle Hall; BNT Consulting LLC; Bichvan Ngoc Thach; IOS
23   Consulting Services, LLC; Ioannis Sanchez; CM Online Strategies, LLC; Carmen Moreno;
24   Cmont Web Services, LLC; Christopher Montigelli; Hillard Group Marketing, LLC; and Micah
25   Hiller (individuals the "merchant defendant principals," entities the "merchant defendant
26   entities," and collectively, the "merchant defendants")'s motion to dismiss.  (ECF No. 78).
27   Plaintiff responded.  (ECF No. 96).  The merchant defendants replied.  (ECF No. 100).

28

James C. Mahan
U.S. District Judge

1
2
3

Also before the court is defendants TH Quality, LLC ("THQ") and Tim Hartmann ("Hartmann") (collectively, the "THQ defendants")'s motion to dismiss.  (ECF No. 127). Plaintiff responded.  (ECF No. 129).  The THQ defendants replied.  (ECF No. 130).

4

Also before the court is plaintiff's motion to strike.[1]  (ECF No. 98).  Intrator responded.

5

(ECF No. 105).  Plaintiff has not replied, and the time to do so has passed.

6

Also before the court is plaintiff's second motion to strike.[2]  (ECF No. 103).   The

7

merchant defendants responded.  (ECF No. 112).  Plaintiff has not replied, and the time to do so has passed.

8

## I.    INTRODUCTION

9
10
11
12

Plaintiff brings four causes of action: (1) violation of 18 U.S.C. § 1962(c)—Racketeer Influenced and Corrupt Organization Act ("RICO Act")—(the "RICO claim") against all defendants; (2) fraud and deceit against the merchant defendants; (3) fraud and deceit against Intrator and Plaut; and (4) civil conspiracy to defraud against all defendants.

13
14
15
16
17

Underlying all claims is an alleged scheme to defraud financial institutions and consumers out of money and property by "fraudulently obtaining credit card payment processing services for sham merchants, …knowingly misrepresent[ing] to banks and credit card processors the true identities of the processing merchants, and thereafter process[ing] fraudulently-obtained and auto-generated credit card numbers through the various merchant accounts they opened with multiple processors."  (ECF No. 1).

18

### a.    Online payment processing

19
20
21
22
23

Credit or debit card processing for online payments is a multi-step process.   First, cardholders present their card—typically by entering the card number and associated information—to an online merchant for a transaction.  The merchant then sends the information for each authorized transaction to a payment processor, who sends those details to the appropriate card association (e.g., Visa, Mastercard).   The card association then contacts the

24
25
26
27

[1] Plaintiff seeks to strike Intrator's second request for judicial notice and its exhibits (ECF Nos. 81, 81-1, 81-2), the declaration of Jerome Doctors in support of Intrator's motion to dismiss and reply to the response thereto (ECF No. 82) and its exhibit C (ECF No. 82-1), errata to said declaration and exhibit (ECF No. 85), and Plaut's joinder to Intrator's second request for judicial notice (ECF No. 87).

28

[2] Plaintiff seeks to strike evidence submitted with the merchant defendants' reply to the response to its motion to dismiss (ECF No. 100-1).

**James C. Mahan**
**U.S. District Judge**

- 2 -

issuing bank (i.e., institution that issues the credit or debit card to the cardholder) with the information.

The issuing bank may either approve or decline the transaction pending determinations of security (e.g., via CVV verification), available funds/credit, etc.  If approved, the issuing bank transfers funds from the cardholder's account to the merchant bank (i.e., the bank used by the merchant).  Finally, once the merchant bank receives the funds, it deposits them into the merchant's account.

In the context of this process, plaintiff is a payment processor.  Payment processors are companies that process card transactions by connecting the parties necessary for an online card payment.  These necessary parties generally include merchants, banks, and card networks.  The defendant merchant entities and THQ are merchants.

>        *b.*        **Plaintiff's business & the merchant defendants**

The following is alleged in plaintiff's complaint.[3]  (ECF No. 1).

Plaintiff provides payment processing services for numerous commercial entities and local governments.  It alleges its primary role is to ensure funds to pay for goods and services are deposited for merchants and that issuing banks are accurately charged by merchants.  In the e-commerce industry specifically, plaintiff provides credit card processing for various types of business including continuity businesses, which are considered high-risk merchants.[4]

Between January 2019 and October 2019, plaintiff alleges Intrator and Plaut submitted ninety-nine merchant processing applications, eighty-three of which plaintiff denied and sixteen of which plaintiff accepted.  The sixteen accepted are the merchant defendant entities, which the applications indicated were each owned by their respective namesake merchant defendant principal.  The applications each purported to sell products online using a continuity business model and sought less than $30,000 in processing volume monthly.  Between February 2019 and October 2019, plaintiff performed its standard underwriting and started processing credit card transactions for merchant defendants.

---

[3] Allegations in the complaint are not findings of the court.

[4] Continuity business offer products on a subscription service, oftentimes with an auto-ship program with automatic payment at periodic intervals.  They tend to be higher risk by the industry "due to the credit card not being physically present for the transaction, the types of products sold, and the nature of opt-out, subscription-based and auto-ship transactions."  (ECF No. 1).

James C. Mahan
U.S. District Judge

Plaintiff's risk department began monitoring the merchant defendant entities' sales transaction activity pursuant to normal procedure.  The monitoring is meant to detect indicators of illegitimate activity, such as unusual processing volumes or patterns and excessive chargebacks.[5]  Each of the merchant defendants was terminated as a client of plaintiff less than six months after their initial application approval—sometimes in as little as two weeks—for various reasons, but most often high chargeback-to-sale ratios.  Four of the merchant defendant entities were placed on the Member Alert to Control High-Risk Merchants list ("MATCH list") by another bank, which resulted in immediate termination.

### c.  The common enterprise

Each of the merchant defendants had been recommended by a common sales agent: Interbill, Inc.  Litigation ensued between plaintiff and Interbill, Inc., and plaintiff subsequently performed a more thorough investigation into the merchant defendants' accounts.  Plaintiff's investigation and analysis revealed a "extensive, sophisticated, credit-card processing scheme designed and orchestrated to defraud consumers, credit card processors such as plaintiff, banks and the [card associations]."

Specifically, plaintiff discovered in 2021 that the merchant defendant entities were not sixteen separate legitimate businesses, but instead sham entities created to allow Intrator, Plaut, and the THQ defendants to use the merchant defendant principals' names and credit to apply for credit card processing accounts with plaintiff and other payment processors.  The THQ defendants are responsible for providing products, marketing, and customer service for all sixteen merchant defendants.  The merchant defendants had no intent to conduct legitimate business other than as a façade for the THQ defendants.

The merchant defendants, Plaut, and Intrator fraudulently conveyed sixteen low-risk entities completely unrelated to the THQ defendants in their applications.  If plaintiff had known they were all a cover for the THQ defendants, it would have assessed a $500,000-per-month, high-risk application and not approved it.

Ultimately, the THQ defendants organized, directed, and conducted the common enterprise.  They organized and paid the merchant defendant principals to use their names and credit histories; paid to formally organize the merchant defendant entities; provided various

---

[5] "Chargebacks occur when customers contact their credit card issuing bank o dispute a charge appearing on their credit card account statement."  (ECF No. 1).

products, fictitious names, and websites to fraudulently convey an appearance of legitimate commerce; organized and paid for a customer service call center and marketing, also to fraudulently convey an appearance of legitimate commerce.

> ### *d.* **Injury**

Once the merchant defendant entities were accepted by plaintiff for payment processing, they ran transactions with stolen and/or autogenerated credit card numbers.  They turned off security measures such as CVV verification and submitted numerous, small transactions at the end of each month to artificially lower the chargeback-to-sale ratios.  This fraudulent tactic allowed defendants to continue the scheme for weeks and, in some cases, months.

Plaintiff reports $1,440,793 worth of processed transactions from defendants, the majority of which is fraudulent, as well as reputational harm.  It seeks to injunctive relief against defendants and redress for the parties harmed by defendants' scheme.

## II.    LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss.  First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth.  *Id.* at 678–79.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.  *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.  *Id.* at 679.  A claim is facially plausible when the plaintiff's complaint

James C. Mahan
U.S. District Judge

alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

Allegations of fraud are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud . . . ."). Rule 9(b) operates "to give defendants notice of the particular misconduct which is alleged," requiring plaintiffs to identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (citations omitted). "The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Id.* (citations omitted). It provides, however, that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme

James C. Mahan
U.S. District Judge

- 6 -

Court has interpreted Rule 15(a) and confirmed the liberal standard district courts must apply when granting such leave.  In *Foman v. Davis,* the Supreme Court explained:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

371 U.S. 178, 182 (1962).

## III.   DISCUSSION

### a.  Motions to strike

In two separate motions, plaintiff moves to strike (1) Intrator's second request for judicial notice (ECF No. 81), exhibits A and B thereto (ECF Nos. 81-1, 81-2), and Plaut's joinder thereto (ECF No. 87); (2) declaration of Jerome doctors in support of reply and Intrator's motion to dismiss (ECF No. 82), exhibit C thereto (ECF No. 82-1), and associated errata (ECF No. 85); and (3) exhibit A to the reply to response to the merchant defendants' motion to dismiss (ECF No. 100-1).  (ECF Nos. 98, 103).

#### a.        Judicial notice & reply evidence

The prior litigation was initiated by Interbill, Inc, against plaintiff for failure to pay referral fees and proceeded through arbitration (the "Interbill arbitration").  (ECF No. 70).  Intrator requests this court—with Plaut joining—to take judicial notice of an excerpt from a brief submitted by plaintiff in the Interbill arbitration as well as an order of the arbitrator denying subpoenas.[6]  (ECF Nos. 81, 81-1, 81-2, 87).  Both documents are submitted in support of Intrator's reply to the response to his motion to dismiss.  (ECF Nos. 81, 81-1, 81-2).  Intrator also submits a declaration from Jerome Doctors (the "Doctors declaration") and an exhibit attached thereto in support of his reply.  (ECF Nos. 82, 82-1).

Plaintiff's motion seeks to strike these documents—and Plaut's joinder—because Intrator submits them, for the first time, with his reply.  (ECF No. 98).  Introducing new evidence with a reply is improper, plaintiff argues, because the nonmovant is not afforded the opportunity to

---

[6] Intrator also files a request for judicial notice with his motion to dismiss (ECF Nos. 63, 68), which the court grants.

James C. Mahan
U.S. District Judge

- 7 -

respond to it.  (ECF No. 98 (citing *J.G. v. Douglas Cnty. Sch. Dist.*, 552 F.3d 786, 803 n.14 (9th Cir. 2008); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996))).

Federal Rule of Evidence 201 provides for judicial notice of adjudicative facts.  Under Rule 201(b)(2), the court may "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b)(2).  Rule 201(c)(2) states that the court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).

"Generally, a party cannot introduce new evidence or new arguments in a reply brief." *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 2019 WL 4686353, at *1 (N.D. Ala. Feb. 28, 2019) (citing *Pacquiao v. Mayweather*, 2010 WL 3271961, No. 2:09-cv-02448-LRH-RJJ, at *1 (D. Nev. Aug. 13, 2010)).  If new evidence is a presented, a court typically can strike the evidence or give the opposing party a chance to respond.  *Id.* (citing *Provenz*, 102 F.3d at 1483).  However, if the new evidence responds to an argument raised in the response brief, then a surreply is not always warranted.  *Id.* (citing *Chemence Med. Prods., Inc. v. Medline Indus., Inc.*, 119 F. Supp. 3d 1276, 1382 (N.D. Ga. 2015).  Though *Roche Diagnostics* is not binding on this court, neither party presents binding caselaw on this issue, and the court likewise finds no binding caselaw on this point.  The court finds *Roche Diagnostics* persuasive.

Here, the documents from the Interbill arbitration are proceedings from a different tribunal and thus available for judicial notice.  Plaintiff presents no discernible, valid argument as to why judicial notice is inappropriate here.   Thus, the court takes judicial notice of the arbitration documents.  (ECF Nos. 81-1, 82-2).

Moreover, the declaration and exhibit were introduced to respond to the argument plaintiff made in its response brief regarding damages.  (ECF No. 105; *see* ECF No. 63).  Because it is in response to an argument in the response, the court does not find it necessary to strike nor permit plaintiff to reply.  *See Roche Diagnostics*, 2019 WL 4686353, at *1.

Plaintiff finally argues that extrinsic evidence cannot be considered by the court without converting a motion to dismiss to a motion for summary judgment.  (ECF No. 98 (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001))).  However, courts can consider evidence and facts outside the four corners of the complaint when considering whether

James C. Mahan
U.S. District Judge

- 8 -

to grant leave to amend when granting a motion to dismiss.  *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).  Thus, plaintiff's argument is without merit.

Accordingly, plaintiff's motion to strike (ECF No. 98) is DENIED, and Intrator's request for judicial notice (ECF No. 81) is GRANTED.

> ***b.***      Reply evidence in support of reply to response to merchant defendants' motion to **dismiss**

In their reply to the response to their motion to dismiss, the merchant defendants submit the "Merchant Card Processing Agreement" entered into between plaintiff and the various merchant defendant entities.  (ECF Nos. 100, 100-1).  Plaintiff submits the same arguments as its first motion to strike.  (ECF No. 103, *see* ECF No. 98).  The merchant defendants' opposition likewise raises the same counterpoints as Intrator's opposition.  (ECF No. 112; *see* ECF No. 105).

The court thus DENIES plaintiff's second motion to strike (ECF No. 103) for the same reason it denies the first.

> *b.*      **Motions to Dismiss**
>> 1.  Legal standards
>>> A.  RICO

Five elements are required to properly plead a RICO claim: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, or "predicate acts," that (5) causes injury to a plaintiff's business or property.  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005); *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996); *see* 18 U.S.C. §§ 1962(c), 1964(c).

>>> B.  Fraud and deceit

The court construes claims 2 and 3 of the complaint (titled "fraud and deceit" and "fraudulent and deceit," respectively) as claims of intentional misrepresentation.  (*See* ECF No. 1).  The Supreme Court of Nevada provides the elements of intentional misrepresentation:

> A false representation made by the defendant, knowledge or belief on the part of the defendant that the representation is false—or, that he has not a sufficient basis of information to make it, an intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation, justifiable reliance upon the representation on the part of the plaintiff in taking action or refraining from it, and damage to the

plaintiff, resulting from such reliance, are the elements of intentional misrepresentation.

*Lubbe v. Barba*, 540 P.2d 115, 599 (Nev. 1975) (quoting Prosser, Law of Torts, 685 (4th ed. 1971).

Claims 2 and 3 also includes allegations of fraudulent concealment, which requires:

> (1) The defendant must have concealed or suppressed a material fact; (2) [t]he defendant must have been under a duty to disclose that fact to the plaintiff; (3) [t]he defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff…; (4) [t]he plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; (5) [a]nd, finally, as a result of the concealment or suppression of the fact, the plaintiff must have sustained damages.

*Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1415 (D. Nev. 1995).

C.  Civil conspiracy to defraud

Civil conspiracy to defraud requires an agreement between two or more parties who intend to accomplish an unlawful objective through fraudulent means, perform an overt act in furtherance of the conspiracy, and cause damages to a plaintiff.  *Goodwin v. Exec. Trs. Servs. LLC*, 680 F. Supp. 2d 1244, 1254 (D. Nev. 2010); *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003).

2.  Plaut & Intrator

Defendants Plaut and Intrator submit nearly identical motions to dismiss.  (ECF Nos. 63, 70).  Plaintiff submitted one "omnibus response" to respond to both.  (ECF Nos. 76, 77).  Moreover, the same claims are asserted against Plaut and Intrator based on overlapping factual allegations.  (ECF No. 1).  Thus, the court considers Plaut and Intrator's motions to dismiss together.

A.  RICO

The court finds that the second element required to properly plead a RICO claim—that Plaut and Intrator must alleged to be part of an enterprise—is insufficiently pled and dispositive of plaintiff's RICO claim.

"In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (citing 18 U.S.C. § 1962(c)).  "In other words, mere association with an enterprise is not sufficient, but rather, the individual must have participated in some element of direction [of the

James C. Mahan
U.S. District Judge

- 10 -

enterprise].” *C&M Cafe v. Kinetic Farm, Inc.*, 2016 WL 6822071, at *5 (N.D. Cal. Nov. 18, 2016) (citing *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008)).

Plaintiff has alleged that Plaut and Intrator knew the THQ defendants were the ultimate owners of the true entity that the merchant defendants served as a front for, and on behalf of and to the benefit of the THQ defendants, they (1) enlisted the merchant defendant principals as “straw signers,” (2) applied for multiple payment processors against plaintiff's terms and conditions; and (3) both took part in obtaining stolen or fraudulent credit card numbers. (ECF No. 1). The only place in which plaintiff pleads “some element of direction [of the enterprise]” in Plaut and Intrator's action, is a blanket statement that “each of the [d]efendants participated in the operation or management of the enterprise that each [d]efendant had some part in directing the affairs of the enterprise.” (*Id.*); *see C&M Cafe*, 2016 WL 6822071, at *5.

Not only is this statement not pled with sufficient particularity under Rule 9(b), but it is also a conclusory allegation that need not be taken as true. *See Iqbal*, 556 U.S. at 678–79. Thus, the court finds that plaintiff failed to plead an essential element of its RICO claim against Plaut and Intrator, and the claim is appropriately dismissed.

### B. Fraud and deceit

Intrator and Plaut argue that plaintiff does not allege specific facts as to any reliance on their representations nor does it allege any damages therefrom. (ECF Nos. 63, 70). Rather than address the deficiencies, plaintiff's response contends Rule 9(b) requires only that defendants be on notice of the claims against them and understand the claims enough to adequately answer them. (ECF No. 76 (collecting cases)).

In the complaint, plaintiff alleges that Plaut and Intrator submitted the applications for the merchant defendants. (ECF No. 1). In doing so, they represented, *inter alia*, that they personally knew of each merchant defendant principal, that each merchant defendant principal each owned and controlled their respective merchant defendant entity, and that the merchant defendants were operating lawfully and within plaintiff's guidelines. (*Id.*). Plaintiff further alleges that if it had known these representations were false, or certain information was omitted, it would never have provided services to the merchant defendants. (*Id.*).

The allegations, taken as true, do not establish plaintiff's justifiable reliance. Though plaintiff alleges what misrepresentations were made and what information was potentially omitted, it does not allege why it was justified in relying upon that information. (*Id.*). Though

James C. Mahan
U.S. District Judge

plaintiff asserts in its opposition that Plaut and Intrator had a duty to disclose certain information on the application, the complaint makes no such allegation. Thus, the complaint does not sufficiently allege an essential element of fraud and deceit. *See Nev. Power Co.*, 891 F. Supp. at 1415.

Moreover, plaintiff has not alleged damages with sufficient particularity. (ECF No. 1). Plaintiff's only reference to damages is the allegation that "[a]s a direct and proximate result of Plaut and Intrator's fraud and deceit, [plaintiff] was damaged in amount to be determined at the time of trial, but not less than $750,000." (*Id.*). Plaintiff does not allege how Plaut and Intrator's acts or omissions resulted in harm nor does it provide any basis as to the amount of damages. (*Id.*). The complaint does not allege with sufficient particularity "damage to plaintiff, resulting from [ ] reliance" on Plaut and Intrator's alleged misrepresentations or omissions. *See* Fed. R. Civ. P. 9(b); *Lubbe*, 540 P.2d at 599. Alleging facts surrounding the damage to plaintiff with particularity is an essential element of intentional misrepresentation and/or concealment and is not sufficiently pled.

Thus, plaintiff's claim of fraud and deceit against Intrator and Plaut is accordingly dismissed.

### C.  Civil conspiracy to defraud

In their motions to dismiss, Plaut and Intrator contend that plaintiff has "failed to sufficiently plead either a 'concerted action' or an 'inten[t] to accomplish some unlawful objective.'" (ECF Nos. 63, 70 (citing *Flowers* 266 F. Supp. at 1249)). They further contend that Nevada law requires an underlying civil wrong to find liability for civil conspiracy. (ECF Nos. 63, 70 (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007)).

Plaintiff's complaint alleges multiple times that defendants were acting in concert with one another. (ECF No. 1). Moreover, it alleges specific acts each defendant or group of defendants took to further the alleged scheme. (*Id.*). Plaut and Intrator's intent to defraud is alleged throughout the complaint as well. (*Id.*). Though intent is not alleged to the level of particularity required by the heightened pleading standards of Rule 9(b), it need not be. *See Neubronner*, 6 F.3d at 671 (holding intent may be alleged generally for fraud-based claims).

However, plaintiff has failed to allege another civil wrong to underlie its claim for civil conspiracy, which is required by Nevada law. *See Swartz*, 476 F.3d at 764–65. Thus, plaintiff's claim for civil conspiracy against Plaut and Intrator is dismissed.

James C. Mahan
U.S. District Judge

3.  <u>Merchant defendants</u>

Plaintiff alleges a RICO claim, fraud and deceit (i.e. intentional misrepresentation), and civil conspiracy to defraud against the merchant defendants.

A.  RICO

Plaintiff's RICO claim against the merchant defendants fails in the same way it fails as to Plaut and Intrator.  *See* section III.b.1.A *supra*.

Plaintiff has alleged that Plaut and Intrator knew the THQ defendants were the ultimate owners of the true entity for which the merchant defendants served as a front.  (ECF No. 1). Specifically, the complaint alleges the merchant defendant principals acted as "straw signers" and used their names and credit histories to "advance the overall processing scheme. (*Id.*).  It also alleges the merchant defendant entities were "sham entities purporting to apply for credit card processing services" and that their "bank accounts received the ill-gotten funds." (*Id.*).  The only place in which plaintiff pleads "some element of direction [of the enterprise]" in the merchant defendants' actions, is a blanket statement that "each of the [d]efendants participated in the operation or management of the enterprise that each [d]efendant had some part in directing the affairs of the enterprise." (*Id.*); *see C&M Cafe*, 2016 WL 6822071, at *5.

Not only is this statement not pled with sufficient particularity under Rule 9(b), but it is also a conclusory allegation that need not be taken as true.  *See Iqbal*, 556 U.S. at 678–79.  Thus, the court finds that plaintiff failed to plead an essential element of its RICO claim against the merchant defendants, and the claim is appropriately dismissed.

B.  Fraud and deceit

Similarly, plaintiff's fraud and deceit claim fails against the merchant defendants in the same way it fails against Plaut and Intrator.

In the complaint, plaintiff alleges that the merchant defendants, in submitting their applications, represented that (1) they were each a legitimate business seeking payment processing services; (2) each merchant defendant entity was owned and controlled by its respective namesake merchant defendant principal; and (3) that the merchant defendant entities would not be processing with any other payment processors in line with plaintiff's terms and conditions.  (ECF No. 1).  Plaintiff further alleges that if it had known these representations were false, or certain information was omitted, it would never have provided services to the merchant defendants.  (*Id.*).

James C. Mahan
U.S. District Judge

The allegations, taken as true, do not establish plaintiff's justifiable reliance.  Though plaintiff alleges what misrepresentations were made and what information was potentially omitted, it does not allege why it was justified on relying upon that information.  (*Id.*).  Though plaintiff asserts in its opposition that there existed a duty to disclose certain information on the application, the complaint makes no such allegation.  Thus, the complaint does not sufficiently allege an essential element of fraud and deceit.  *See Nev. Power Co.*, 891 F. Supp. at 1415.

Moreover, plaintiff has not alleged damages with sufficient particularity.  (ECF No. 1).  Plaintiff's only reference to damages is the allegation that "[a]s a direct and proximate result of the merchant defendants' alleged fraud and deceit, [plaintiff] was damaged in amount to be determined at the time of trial, but not less than $750,000."  (*Id.*).  Plaintiff does not allege how Plaut and Intrator's acts or omissions resulted in harm.  (*Id.*).  The complaint does not allege with sufficient particularity "damage to plaintiff, resulting from [ ] reliance" on the merchant defendants' alleged misrepresentations or omissions.  *See* Fed. R. Civ. P. 9(b); *Lubbe*, 540 P.2d at 599.  Alleging facts surrounding the damage to plaintiff with particularity is an essential element of intentional misrepresentation and/or concealment and is not sufficiently pled.

Thus, plaintiff's claim of fraud and deceit against the merchant defendants is accordingly dismissed.

### C.  Civil conspiracy to defraud

In its motion to dismiss, the merchant defendants contend the same as Plaut and Intrator: that plaintiff has "failed to sufficiently plead either a 'concerted action' or an 'inten[t] to accomplish some unlawful objective,'" and that Nevada law requires an underlying civil wrong to find liability for civil conspiracy, which has not been sufficiently pled.  (ECF No. 78).

Plaintiff's complaint alleges multiple times that defendants were acting in concert with one another.  (ECF No. 1).  Moreover, it alleges specific acts each defendant or group of defendants took to further the alleged scheme.  (*Id.*).  The merchant defendants' intent to defraud is alleged throughout the complaint as well.  (*Id.*).  Though intent is not alleged to the level of particularity required by the heightened pleading standards of Rule 9(b), it need not be.  *See Neubronner*, 6 F.3d at 671 (holding intent may be alleged generally for fraud-based claims).

Moreover, plaintiff has failed to allege another civil wrong to underlie its claim for civil conspiracy, which is required by Nevada law.  *See Swartz*, 476 F.3d at 764–65.  Thus, plaintiff's claim for civil conspiracy against the merchant defendants is dismissed.

### 4.  THQ defendants

Plaintiff alleges its RICO and civil conspiracy to defraud claims against the THQ defendants.

In support of the RICO claim, plaintiff alleges the THQ defendants (1) served as the liaison between Plaut and the merchant defendants; (2) recruited the "straw signers;" (3) prepared all the sham merchant applications and websites for the merchant defendants; (4) provided the products sold by the merchant defendants; (5) managed al advertising and call center for the merchant defendants' accounts; and (6) were responsible for the fraudulent credit card information that was processed through plaintiff's servers.  (ECF No. 1).  It further alleges that the THQ defendants "organized, directed and ran the common enterprise" by acts such as paying the merchant defendant principals, funding the organization of the merchant defendant entities, and facilitating various business operations of the merchant defendant entities to allow defendants to allow the alleged enterprise to function.  (*Id.*).

What plaintiff's complaint fails to allege, however, are facts specific enough to rise to the heightened pleading standard of Rule 9(b).  To meet this standard, "plaintiff must allege the who, what, when, where, and how of the conduct charged."  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016).  Plaintiff broadly asserts the THQ defendants committed the foregoing acts, but it does not assert any further detail.  The THQ defendants are thus not able adequately respond to the allegations; allegations must be specific enough for defendants to defend against the allegation and "not just deny that they have done anything wrong."  *Id.*; *see Neubronner*, 6 F.3d at 671.

Without more, plaintiff's allegations do not satisfy an essential element of a RICO claim.  Thus, plaintiff's RICO claim against the THQ defendants is appropriately dismissed.

Further, like the other defendants, without an underlying civil wrong, plaintiff's claim for civil conspiracy against the THQ defendants fails.  Plaintiff's civil conspiracy claim against the THQ defendants is thus appropriately dismissed.

### c.  **Leave to amend**

The court considers the Interbill arbitration documents Intrator requests it take judicial notice of.  The order entered by the arbitrator on December 12, 2021, dismissed plaintiff's counterclaims against Interbill with prejudice.  (ECF No. 68-5).  This included a claim of "fraud and deceit."  (*Id.*).  Plaintiffs' fraud and deceit cause of action in the Interbill arbitration alleges

"Interbill, through [sic] its principal and agent, respectively Alan Intrator and Daniel Plout [sic]…".   (ECF No. 68-3).   The facts in the fraud and deceit claim in the arbitration mirror the facts in the complaint.   (*See* ECF Nos. 1, 68-3).

Presumably intentionally, plaintiff does not name Interbill, Inc., as a party nor make any allegations as to the relationship between Intrator or Plaut and Interbill, Inc.   (*See* ECF No. 1). Regardless, plaintiff had every opportunity to litigate its fraud and deceit claim against Intrator and Plaut in the Interbill arbitration.   Likewise, due to the similarity of the factual basis, it could have brought its RICO claim against them in the Interbill arbitration.

Amendment of the complaint would be futile, because plaintiff would be estopped from "taking a second bite at the apple" given the Interbill arbitration.   Being estopped from bringing its RICO claim and fraud and deceit claim against Intrator and Plaut, it likewise could not adequately allege an underlying civil wrong to support its conspiracy claim.   Thus, because amendment would be futile, the court does not grant plaintiff leave to amend.   *See Novak v. United States*, 795 F. 3d 1012, 1020 (9th Cir. 2015) ("Futility alone can justify a court's refusal to grant leave to amend."),

Similarly, plaintiff asserts that after the Interbill arbitration ensued, it conducted further analysis into the merchant defendants.   (ECF No. 1).   Once those investigations "revealed that all [d]efendants were part of an extensive, sophisticated, credit-card processing scheme designed and orchestrated to defraud consumers," including both the merchant and THQ defendants, it could have—and likely must have—litigated that claim against them in the arbitration.   *See* Fed. R. Civ. P. 19 (requiring joinder if "the court cannot accord complete relief among existing parties" without that party); (*id.*).   Thus, any amendment as to the merchant defendants or THQ defendants would be futile.

The court accordingly does not grant plaintiff leave to amend.

IV.     **CONCLUSION**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Intrator's motion to dismiss (ECF No. 63) be, and the same hereby is GRANTED.

IT IS FURTHER ORDERED that Plaut's motion to dismiss (ECF No. 70) be, and the same hereby is, GRANTED.

**James C. Mahan**
**U.S. District Judge**

IT IS FURTHER ORDERED that the merchant defendants' motion to dismiss (ECF No. 78) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion to strike (ECF No. 98) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERD that plaintiff's second motion to strike (ECF No. 103) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the THQ defendants' motion to dismiss (ECF No. 127) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED plaintiff's complaint is DISMISSED with prejudice.

The clerk of the court is instructed to enter judgment in favor of defendants and close this case.

DATED March 31, 2023.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 17 -